**Daniel BRILES, Appellant–Petitioner,**

v.

**WAUSAU INSURANCE COMPANIES, Appellee–Respondent.**

No. 10A04–0605–CV–244.

Court of Appeals of Indiana.

Dec. 12, 2006.

---

Diane E. Bluhm, Bubalo & Hiestand, PLLC, Louisville, KY, Attorney for Appellant.

James L. Fischer, Jr., Boehl Stopher & Graves, LLP, New Albany, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Daniel V. Briles (Briles), appeals the trial court's denial of his Motion to Correct Error contending that the trial court erred by concluding in its declaratory judgment that Appellee–Respondent, Wausau Insurance Companies (Wausau), is not obligated to provide coverage under the terms of its insurance policy.

We affirm.

### ISSUE

Briles raises four issues on appeal which we consolidate and restate as the following single issue: Whether Maurice Cooper's use of Musselman Hotels' shuttle van was within the permissive use as contemplated by the omnibus clause in the hotel's insurance policy.

### FACTS AND PROCEDURAL HISTORY

Maurice Cooper (Cooper) was employed as a van driver/bellman by Musselman Hotels, LLC (Musselman), located in Louisville, Kentucky. His primary responsibility consisted of driving hotel guests to and from the Louisville International Airport. Although van drivers were permitted to drive hotel guests to locations within a five mile radius of the hotel, any deviation from the normal airport route had to be approved by the front desk manager.

On March 10, 2000, Terry Gregory (Gregory) was the manager on duty at the front desk when she was informed by one of the clerks that a man had entered the hotel lobby and had asked the front desk to call a taxi. She was also told by the clerk that this man was not a guest of the hotel. When Cooper saw the person waiting in the lobby, he approached Gregory, inquiring whether he could give the man a ride from the Musselman hotel to a hotel in Southern Indiana for a meeting. As the man was not a guest, Gregory told Cooper he could not use the hotel's shuttle. She also had concerns about construction in Southern Indiana which might tie up the van and interfere with runs to the airport. Despite Gregory's initial answer, Cooper approached her twice more, asking her if he could give the man a ride. Each time, Gregory denied the request. Nevertheless, without Gregory's approval or knowledge, Cooper drove the man to Southern Indiana. While traveling back to the hotel, Cooper rear-ended Briles' car on Interstate 65. Upon his return to Musselman, Cooper was suspended for three days, and subsequently terminated for insubordination and disobeying his supervisor.

On March 5, 2002, Briles filed a Complaint against Cooper and Musselman, claiming negligence and requesting damages. On October 24, 2004, Wausau, Musselman's insurance company, filed an action for declaratory judgment disputing coverage under the policy and naming Cooper and Briles as defendants. On February 23, 2005, Wausau filed a Motion for Summary Judgment, Designation of Evidence and Memorandum of Law, to which Briles objected. On April 18, 2005 and May 31, 2005 respectively, the trial court conducted a hearing on Wausau's Motion for Summary Judgment. On February 23, 2006, the trial court entered its Declaratory Judgment in favor of Wausau. Thereafter, on March 27, 2006, Briles filed his Motion to Correct Errors and/or Motion to Set Aside Judgment which was summarily denied by the trial court.

Briles now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Briles contends that the trial court erred by denying his Motion to Correct Error. Specifically, Briles claims that Cooper was acting within the scope of his employment when he drove Musselman's van into Indiana. Relying on Cooper's job description and the hotel's practices, Briles asserts that Cooper was allowed to transport the man without acquiring special permission. Accordingly, Briles asserts that Cooper is an insured as defined by the terms of Wausau's insurance policy. On the other hand, Wausau alleges that to be an insured under its policy, Cooper had to be driving the vehicle with the policy holder's permission. Focusing on testimony that Cooper violated express restrictions on the use of the van, Wausau contends that it is under no duty to provide coverage.

### I. *Standard of Review*

In the instant case, the trial court entered special findings of fact and conclusions of law pursuant to Ind. Trial Rule 52(A). Therefore, our standard of review is two-tiered: we first determine whether the evidence supports the trial court's findings, and second, we determine whether the findings support the judgment. *Boonville Convalescent Center, Inc. v. Cloverleaf Healthcare Services, Inc.*, 834 N.E.2d 1116, 1121 (Ind.Ct.App.2005), *reh'g denied, trans. denied.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions which rely upon those findings. *Id.* In establishing whether the findings or the judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id.*

While conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.* However, while we defer substantially to findings of fact, we do not do so for conclusions of law. *Id.* We evaluate conclusions of law *de novo* and owe no deference to a trial court's determination of such questions. *Id.*

### II. *Analysis*

Declaring Wausau's insurance policy to be ambiguous, Briles focuses on the scope and content of Cooper's employment. As such, Briles contends that the policy should provide coverage as Cooper performed his normal duties and used the shuttle van as intended at the time of the accident without requiring permission from a supervisor.

■ Insurance policies are governed by the same rules of construction as other contracts. *Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind.Ct.App.2004), *trans. denied.* As with other contracts, the interpretation of an insurance policy is a question of law. *Vann v. United Farm Family Mut. Ins. Co.,* 790 N.E.2d 497, 502 (Ind.Ct.App. 2003), *trans. denied.* When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Gregg,* 812 N.E.2d at 215. We construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs. *Id.* If the language is clear and unambiguous, we give the language its plain and ordinary meaning. *Id.* An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.* However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language. *Id.* We must accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions. *Id.* Additionally, the power to interpret contracts does not extend to changing their terms and we will not give insurance policies an unreasonable construction to provide additional coverage. *Id.*

Although the trial court interpreted Wausau's insurance policy to mean that Cooper was not an insured, Briles now argues that this conclusion is clearly erroneous. The omnibus clause in Wausau's insurance policy reads as follows:

WHO IS AN INSURED

The following are "insureds:"

a.  You[1] for any covered "auto."

b.  Anyone else while using with your permission a covered "auto" you own, hire, or borrow . . .

(Appellant's App. p. 92). Based on this provision, our analysis will turn on what constitutes permissive use under the policy.

■ Jurisdictions throughout the country analyze the issue of permissive use by applying one of several different approaches, with Indiana adhering to the so-called "liberal rule." *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.,* 686 N.E.2d 102, 106–07 (Ind.1997). Pursuant to the liberal rule:

> One who has permission of an insured owner to use his automobile continues as such a permittee while the car remains in his possession, even though that use may later prove to be for a purpose not contemplated by the insured owner when he entrusted the automobile to the use of such permittee.

*Id.* at 107. This rule was originally announced by the Seventh Circuit in *Arnold v. State Farm Mut. Auto. Ins. Co.,* 260 F.2d 161 (7th Cir.1958), and functioned in such a way that a deviation in use from that originally intended by the owner of a vehicle would not terminate the owner's initial grant of permission. *See Manor v. Statesman Ins. Co.,* 612 N.E.2d 1109, 1113 (Ind.Ct.App.1993), *trans. denied.*

■ However, the *Arnold* court noted that in some situations factors could be present that would result in a termination of the initial permission. *Arnold,* 260 F.2d at 165. Thus, subsequent decisions interpreting *Arnold* have crafted an exception to the liberal rule whereby the initial permission to use a vehicle is no longer effective if an "express restriction" placed on the permission by an employer

---

**1.** Throughout the policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, *i.e.,* Musselman Hotels. (Appellant's App. pp. 90 & 69).

or owner is violated. *See Warner Trucking,* 686 N.E.2d at 107 (where a truck driver's initial grant of permission was found to have been terminated when he drove after drinking because such action was in violation with a company policy on the use of alcohol); *Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897, 904 (Ind.Ct. App.1992), *trans. denied* (company policy expressly prohibited employees' personal use of company vehicles); *Michael v. Ind. Ins. Co.,* 469 N.E.2d 1222, 1225 (Ind.Ct. App.1984) (holding no permission to use company vehicle for personal business because employer expressly limited employee's use of company vehicle to travel to and from work). In these circumstances, the focus is not on whether the operator deviated from a use contemplated by the employer, rather the determinative question is whether the operator's use of the vehicle was restricted in the first place. *Arnold,* 260 F.2d at 165. Thus, in a coverage dispute, permissive use cannot be implied when an express restriction on the scope of permission prohibits the use at issue. *State Farm Mut. Auto. Ins. v. Gonterman,* 637 N.E.2d 811, 814 (Ind.Ct.App. 1994).

■ In the case before us, the evidence reflects that upon starting his employment at Musselman, Cooper signed a Van Driver Job Description.[2] This Description indisputably includes as one of his duties

9. Transport hotel guests to/from the airport in a timely manner.

\* \* \*

16. Transport hotel guests to and from the Louisville International Airport. Obey all traffic rules, drive in a courteous manner. Take quickest, most efficient route between the hotel and the airport. When deviating from normal airport transportation, obtain permission from a manager or supervisor.

(Appellant's App. p. 226). Cooper was clearly aware of this restriction placed on the use of the van as on the day of the accident he requested permission from his supervisor, Gregory, to escort the man to his meeting in Indiana. The record reflects that Cooper asked for permission up to three times, with Gregory explicitly refusing to let him drive the shuttle van each time. Nevertheless, without notifying Gregory, Cooper transported the man across the border to Indiana. Gregory testified that a little while later, Cooper phoned her, informing her that he was involved in an accident on I–65 on his way back to the hotel. Upon returning to the hotel, Cooper signed an incident report and was suspended for three days. In this incident report, he admitted to acting "against his direct supervisor's wishes." (Appellant's App. p. 224).

Here, the evidence clearly supports that Cooper knew that he needed express permission when deviating from the airport route. Not only did he sign off on his job description, but he even attempted unsuccessfully to comply with this policy by requesting permission from Gregory on three separate occasions. Accordingly, as Musselman restricted the use of its van, Cooper violated these restrictions when he drove the shuttle van into Indiana.

■ Nevertheless, even when an employer maintains a company policy which prohibits the use of company vehicles for certain reasons, coverage will apply under an omnibus clause where the employer acquiesces in an employee's violation of company policy by relaxing those

---

2. While we recognize that the Van Driver Job Description enumerates the duties of the afternoon/evening driver, whereas Cooper only worked in the mornings, nevertheless, Cooper signaled his understanding of these duties by signing the second page.

prohibitions. *Manor*, 612 N.E.2d at 1113. As such, the employer bears the burden of enforcing any restrictions upon the use of company vehicles. *Id.* However, testimony elicited at trial establishes that the instant incident was the first warning Cooper received since being employed at the hotel. As he received a written reprimand and was thereafter suspended for three days, the record is devoid of any evidence inferring that Musselman might have acquiesced in Cooper's circumvention of the required express permission. Even expanding our review to include the habits of all the shuttle drivers, we cannot say that an acquiescence existed that would have relaxed the hotel's general permission rule. In this light, we acknowledge that even though Gregory testified that the permission rule was not strictly enforced, she also added that, in a separate meeting, the drivers had been cautioned to maintain the mileage log of the shuttle van and had been instructed that the airport route remained the main priority.

Even though the trial court relied mainly on Gregory's testimony and accompanying documents in making its decision, Briles now relies solely on Cooper's self-serving statements declaring that it was Cooper's understanding that he did not need permission to transport guests in the shuttle on days it was not busy. In support of this argument, Briles in essence casts aspersions on Gregory's credibility. Closely related to this allegation, are Briles' contentions that certain of the trial court's findings are not supported by the evidence. However, in phrasing this claim, Briles appears to outright reject Gregory's trial testimony which was relied upon by the trial court in its formulation of its findings, in favor of Cooper's contradictory statements.

While it is true that contradictions between Gregory's and Cooper's testimony exist, the trial court ultimately heard the evidence, observed the witnesses' demeanor while on the witness stand,[3] considered their bias and prejudice, their interest, and their knowledge or lack of knowledge. Mindful of our standard of review in which we consider only the evidence favorable to the judgment, the determination of witnesses' credibility and the weighing of their testimony falls squarely within the province of the trial court. Consequently, we decline Briles' invitation to reweigh the evidence and assess the credibility of the witnesses. *See Boonville Convalescent Center, Inc.*, 834 N.E.2d at 1121. Accordingly, our review concludes that all trial court's findings are supported by the evidence and all reasonable inferences thereof.

Based on the evidence before us, it is clear that Musselman placed an express restriction on the use of the shuttle, requiring the drivers to obtain permission when deviating from the airport route. While the liberal rule has been called the "hell or high water rule," it is not absolute and it has its limitations. *Arnold*, 260 F.2d at 165; *Metzler*, 586 N.E.2d at 904. Confronted with the rule's limitations in the instant case, we find that Cooper violated the express restriction when he drove the van into Indiana against Gregory's express refusal. *See Warner Trucking*, 686 N.E.2d at 107. Therefore, we affirm the trial court's Order for Declaratory Judgment.[4]

**3.** Even though Cooper did not testify at trial, Cooper's deposition statement was read into the trial court's record during trial.

**4.** Although Briles also contends that Wausau improperly failed to join indispensable parties in its declaratory judgment action, we find the argument waived as Briles raised this issue for the first time on appeal. *See, e.g., Naville v. Naville*, 818 N.E.2d 552, 553 (Ind.Ct.App. 2004).

## CONCLUSION

Based on the foregoing, we find that the trial court properly found that Cooper's use of the shuttle van violated the permissive use restrictions of the omnibus clause.

Affirmed.

BAILEY, J., and MAY, J., concur.